**UNITED STATES BANKRUPTCY COURT**

DISTRICT OF NEW JERSEY

M.L. KING, JR. FEDERAL BUILDING

50 WALNUT ST., 3RD FLOOR

NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH  (973) 645-4693

BANKRUPTCY JUDGE  Fax: (973) 645-2606

**NOT FOR PUBLICATION**

FILED

JAMES J. WALDRON, CLERK

**APRIL 20, 2011**

U.S. BANKRUPTCY COURT

NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

April 20, 2011

**LETTER OPINION**

**ORIGINAL FILED WITH THE CLERK OF THE COURT**

McCusker, Anselmi, Rosen, & Carvelli, P.C.
Michael T. Millar, Esq.
98 East Water Street
Toms River, New Jersey 08753
*Counsel for Movants-Defendants, Weichert Co., d/b/a Weichert, Realtors, and Mortgage Access Corp. d/b/a Weichert Financial Services*

Paul J. Fishman, Esq.
United States Attorney
Jordan M. Anger, Esq.
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
*Counsel for Respondent, United States Social Security Administration*

**Re:    Mary L. Dixon-Ford v. US Bank National Association etc., et al.**
**Adv. Pro. No. 10-01772 (DHS)**
**Lead Case No. 09-32052 (DHS) (In re Mary L. Dixon-Ford)**

Page 2
April 20, 2011

Dear Counsel:

  Before the Court is a motion by Weichert Co., d/b/a Weichert, Realtors ("Weichert") and Mortgage Access Corp. d/b/a Weichert Financial Services ("WFS") (collectively, "Defendants") to compel the deposition of John A. Elder, III ("Elder"), a federal employee of the United States' Social Security Administration ("SSA"). The SSA is a non-party to this adversary proceeding and opposes the Defendants' motion on several grounds.

  For the reasons that follow, the motion is denied with prejudice. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## **FACTS AND PROCEDURAL HISTORY**

  The facts pertinent to this motion are largely undisputed. The Plaintiff-Debtor, Mary L. Dixon-Ford, filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on August 23, 2009. She subsequently commenced this adversary proceeding, which sets forth allegations of mortgage fraud against the Defendants and US Bank National Association, as Trustee for CMLTI 2007-10. The Debtor and John Elder ("Elder") are both employees of the SSA, where Elder is the Debtor's supervisor. (Cert. of Michael Millar in Supp. of Mot. to Compel., ¶¶ 9-10) ("Millar Cert.") The Defendants are now seeking to depose Elder regarding his role in completing a Verification of Employment ("VOE") form regarding the Debtor.

  In 2007, the Debtor financed the purchase of real property with a "stated income" mortgage loan from WFS. (Millar Cert., ¶¶ 4-7) In a stated income loan, the borrower advises the lender of her income and the lender requires a VOE from the borrower's employer. (*Id.* at ¶ 7) The VOE merely serves as proof of the borrower's employment. (*Id.*) In the normal course, the VOE is completed by the employer and transmitted directly to the lender. It does not pass through the hands of the borrower. (*Id.*) During the discovery process, two versions of the VOE were produced, with two different job descriptions for the Debtor. (*Id.* at ¶ 10) Discovery also yielded handwritten notes that the Defendants suggest will prove Elder provided the VOE to the Debtor before they received it. (*Id.* at ¶ 11)

  The Debtor alleges that the Defendants "intentionally misstated the Debtor's income in the credit applications so that Debtor would qualify for a loan." (Adversary Compl., ¶ 33) The Defendants dispute the allegation and intend to use Elder's testimony to (i) learn how he came into possession of the VOE, (ii) verify that he completed the VOE, (iii) learn whether he completed one or both versions, and (iv) investigate his interactions with the Debtor prior to

Page 3
April 20, 2011

providing the VOE to the Defendants. (Millar Cert., ¶ 11)   Ultimately, it appears that no one disputes that at least the original VOE was competed by Elder and then faxed to WFS. (*Id.,* Ex. B at 1; Opp'n of the United States to Mot. to Compel, p. 2 ("SSA Opp'n"))  The Defendants believe the Debtor falsified the VOE at issue. (Millar Cert., Ex. B at 1)

The SSA refused to consent to the deposition of Elder for several reasons. First, it argues that the Defendants did not provide the proper documentation to evidence the Debtor's consent to the deposition of her employer and a formal waiver of her statutory privacy rights. (SSA Opp'n, p. 3)   Second, the deposition would unduly burden the SSA in a private matter by diverting Elder from official duties. (*Id.*)  Third, the requested testimony would not further the interests of the SSA and would violate its strict policy of impartiality in private litigation matters. (*Id.*)  Additionally, the SSA argues that the Court lacks jurisdiction to compel the deposition of a federal employee based on sovereign immunity. (*Id.* at pp. 3-4)  Accordingly, the SSA requests that the Defendants' motion to compel be denied.

## DISCUSSION

I.     **Sovereign Immunity and Reviewability of Federal Agency Decisions**

A sovereign is immune from suit absent its consent. *U.S. v. Sherwood,* 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941). The United States, as sovereign, is therefore immune from suit unless Congress enacts a waiver. *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 112 S. Ct. 1011; 117 L. Ed. 2d 181 (1992). In the absence of a congressional waiver, an action against the United States does not fall within the jurisdiction of the federal courts. *See Glidden v. Zdanok*, 370 U.S. 530, 82 S. Ct. 1459; 8 L. Ed. 2d 671 (1962).

The SSA argues that Congress, in exercising its exclusive power to waive sovereign immunity, generally does so in an exact and limited manner. *See Nordic Village*, *supra.*  The Administrative Procedure Act, 5 U.S.C. § 701-706 ("APA"), provides such a waiver for the express purpose of challenging federal agency decisions, such as the refusal to consent to the deposition of a federal employee. The SSA contends that such challenges may only be made pursuant to the APA and because the Defendants did not commence an action under the APA, the Court must deny their motion for lack of jurisdiction.

The Court does not find this argument persuasive. As the SSA correctly points out, the APA expressly provides for review of agency decisions by the federal courts, except where a "statute precludes judicial review or agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); 5 U.S.C. § 702 (providing for review in federal courts when a litigant seeks "relief other than money damages.")  Furthermore, the Ninth Circuit rejected the argument that sovereign immunity can prevent the federal courts from compelling federal officers to give factual testimony. *Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 778 (9th Cir. 1994)

Page 4
April 20, 2011

(citing *Cf. Northrop v. McDonnell Douglas Corp.,* 243 U.S. App. D.C. 19, 751 F.2d 395, 398 n.2 (D.C. Cir. 1984) (declining to "graft onto discovery law a broad doctrine of sovereign immunity"). The *Exxon* court specifically distinguished, for sovereign immunity purposes, between a state court subpoena and a federal subpoena, when directed at federal officials. *Id.*

Here, the subpoena was issued to a federal employee in connection with a federal court proceeding. In addition, the present motion, which alleges improper or unlawful conduct by a federal agency and does not seek money damages, is expressly permitted by 5 U.S.C. § 702. *See also Exxon Shipping Co.*, 34 F.3d at 778, n. 9. Thus, sovereign immunity does not deprive the Court of subject matter jurisdiction.

As to judicial review, there is a broad presumption in favor of review. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 28 L. Ed. 2d 136, 91 S. Ct. 814 (1971). The exception to reviewability found in 5 U.S.C. § 701(a)(2) is to be applied only when there is no law to apply. *Id.* In *Davis Enters. v. U.S. Envtl. Prot. Agency,* 877 F.2d 1181, 1185-1186 (3d Cir. 1989) *cert. den.* 493 U.S. 1070 (1990), the Third Circuit, without directly addressing the sovereign immunity issue, held that an agency decision refusing to produce an employee for a deposition is reviewable by the courts. The *Davis* court found that agency decisions are reviewable "when agency regulations or internal policies provide sufficient guidance to make possible federal review under an abuse of discretion standard . . . " *Id.* (citing *Chong v. Director, U.S. Information Agency*, 821 F.2d 171, 175-176 (3d Cir. 1987) (regulations that required the agency to make a specific review and "transmit a recommendation to the Attorney General" [. . .] "provided sufficient guidance to reviewing courts and were therefore reviewable")).

On the reviewability issue, the facts of this case are indistinguishable from *Davis* and *Chong*. The decision by the SSA to prohibit Elder from testifying was based on established guidelines. (*See* SSA Opp'n, Ex. 1; 20 C.F.R. § 403 (2003)) SSA regulations require prior authorization from the SSA Commissioner before an agency employee may appear and testify in a legal proceeding to which the agency is not a party. 20 C.F.R. § 403.100. In determining whether to authorize such testimony, the Commissioner considers several factors, including but not limited to: (i) the risk of violation of law or compromise of government privilege; (ii) the burden imposed on the SSA; and (iii) the interest served by allowing the testimony. 20 C.F.R. § 403.130. These regulations provide sufficient guidance and "objective benchmarks" to the Court in reviewing challenged agency decisions. *Davis*, 877 F.2d at 1186. Accordingly, the SSA's refusal to permit Elder to testify is reviewable.

## II.    Standard of Review

The proper standard for judicial review of final agency decisions is whether the decision was arbitrary, capricious, or an abuse of discretion, *see* 5 U.S.C. § 706(2)(A); *Davis*, 877 F.2d at 1186 (citation omitted), and whether it was rationally connected to the facts and applicable law. *Davis*, 877 F.2d at 1186 (citing *Shane Meat Co. v. U.S. Dep't of Defense,* 800 F.2d 334, 336 (3d

Page 5
April 20, 2011

Cir. 1986). Where agency regulations provide for "broad discretion," the scope of review is "severely limited." *Chong*, 821 F.2d at 176. The reviewing court may only consider (1) whether the agency followed its own guidelines or (2) committed a clear error of judgment. *Davis*, 877 F.2d at 1186 (citing *Overton Park,* 401 U.S. at 416).

There is no question that the SSA followed its own regulations and guidelines in refusing to allow Elder to testify. Attached to its opposition papers, the SSA provided a copy of a letter sent by its Associate General Counsel to Defendants' counsel on February 25, 2011. (SSA Opp'n, Ex. 1) The letter clearly states the applicable regulations and the agency's reasons for denying the application for testimony pursuant thereto. (*Id.*) Thus, the only remaining issue is whether that decision was a clear error of judgment.

In considering the "clear error" standard, the Court will look to each of the three factors, as specified in 20 C.F.R. § 403.130, cited by the SSA in support of its decision to deny the Defendants' application. First, would the requested testimony violate a law or compromise a government privilege? The SSA argues that the testimony "could violate both the Privacy Act and the Social Security Act," ostensibly by forcing Elder to divulge confidential information about the Plaintiff. (SSA Opp'n, pp. 3 and 13) On the other hand, the Defendants have repeatedly sought to address these concerns by volunteering to take a very limited deposition solely as to circumstances surrounding the completion of the VOE. (Defs.' Reply Br., p. 9) It is difficult to see what confidential information this testimony would imperil. Furthermore, the Defendants advise the Court that the Plaintiff herself has consented to the testimony. (Miller Cert., ¶ 12) However, no signed, written consent has thus far been produced. Nevertheless, in all likelihood, the SSA overstates the potential threat to the Plaintiff's privacy. Similarly, the agency did not attempt to claim that the testimony sought would compromise a government privilege. As to the first factor, the Court finds very little support in the facts or law for the SSA's position.

The second factor considered by the SSA was whether the requested testimony would unduly burden the agency. The SSA argues against allowing Elder to be "diverted from his official duties" to testify in a private litigation matter. (SSA Opp'n, Ex. 1 at 2) The Court is not persuaded of the alleged undue burden. Unlike *Davis*, where approximately two hundred homeowners were potentially seeking discovery from Environmental Protection Agency officials regarding agency findings,[1] this case involves a single plaintiff seeking a single two-hour deposition limited in scope to the private VOE form. The Defendants also offered to ease the burden on the agency by paying for lost time and conducting the deposition at SSA offices. (Defs.' Reply Br., p. 2) Accordingly, the Court does not find that the requested testimony would pose an undue burden on the agency.

---

[1] *Davis*, 877 F.2 at 1187, n.2.

Page 6
April 20, 2011

The third factor considered by the SSA was whether its own interests would be served by allowing its employee to testify. The SSA specifically noted that it was not a party to the case and that it maintains a strict policy of impartiality among private litigants. (SSA Opp'n, Ex. 1 at 2, citing 20 C.F.R. § 403(c)(2))  This argument would be more persuasive if the Defendants were seeking testimony regarding official activities of the SSA. They are not. Here, the subpoena was not served on Elder in his official capacity, but rather as a private citizen. It was not served on the SSA. Although it seeks information related to actions Elder took as a supervisor at the SSA, the act of completing a VOE at the Debtor's request is neither a specific function of the SSA nor an official government duty. Rather, it is an act that might be completed by any employer in any field of work, public or private. In fact, the agency concedes that the entire matter is "unrelated to SSA's operations." (SSA Opp'n, Ex. 1 at 2) The Defendants merely seek evidence relating to an alleged fraud. Such evidence is not clearly adverse to the agency, nor is it clear at this stage whether it might benefit the Defendants or the Plaintiff or neither. In contrast, the Court must consider the public interest and the "right to every man's evidence." *Davis*, 877 F.2d at 1189 (citing, *e.g., Trammel v. United States*, 445 U.S. 40, 50, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980) (further citations omitted)).  Ultimately, interest of the SSA in maintaining an appearance of impartiality and minimizing the potential burden on its employee does not clearly outweigh the public interest in the evidence being sought.

However, whereas the Court finds little support for the agency's decision under a strict review of the three enumerated factors, this is only half of the equation. As Judge Weis noted in his dissent to the *Davis* decision, "[t]he determination of whether a given agency action is arbitrary or capricious may not take place in a vacuum – the facts and general principles of law must be considered. Differing circumstances can excuse conduct in some instances and fault it in others." *Davis*, 877 F.2d at 1189 (Weis, J., dissenting). Accordingly, the Court will also consider the relevance of the evidence being sought and whether it might be obtained through a less intrusive means.

Here, the Plaintiff alleges that the Defendants falsified the VOE in order to permit her to obtain a mortgage that she would not otherwise have qualified for. Conversely, the Defendants maintain that it was the Plaintiff who falsified the VOE in question. In any event, the Defendants claim that neither the falsified VOE nor the handwritten notes, allegedly showing that the Plaintiff received the VOE prior to its being faxed to the Defendants, came to their attention prior to the discovery process, when they were produced by the Plaintiff. (Millar Cert., ¶¶ 10-11; Defs.' Reply Br., p. 1) At oral argument, SSA's counsel advised the Court that the Plaintiff alleged she received two VOE forms at closing and was told she could keep them for her personal files. Defendants' counsel did not confirm or deny this chain of events. However, in its entirety, the record before the Court does not clearly demonstrate that the Defendants relied on, or were even aware of, a falsified VOE at the time they considered and made the loan to the Plaintiff. Thus, no fraud could have been committed upon them. Likewise, if the Defendants were unaware of the document, they could not have used it to commit a fraud upon the Plaintiff. Thus, as suggested by the SSA, the relevancy of the requested testimony is dubious. At best, the

Page 7
April 20, 2011

requested testimony might confirm that Elder, rather than the Plaintiff, was the person who faxed the original copy of the VOE to the Defendants. It seems highly unlikely that it could help demonstrate who falsified the second VOE, when such an act occurred, or when it came into the Plaintiff's possession.

If the Defendants merely wished to establish a "chain of custody" concerning the VOE from Elder to themselves, or to learn whether he discussed the VOE with the Plaintiff, this is the type of discovery that could be accomplished with a specific set of interrogatories, rather than a full deposition. In fact, the SSA offered to make Elder available to answer written interrogatories, but Defendants rejected the offer. Under the circumstances, this leads the Court to question whether there is any real value to the information allegedly being sought or whether it is merely a pretext for a more expansive fishing expedition.

In light of the total circumstances, the Court finds that the SSA did not commit a clear error of judgment in denying the application for testimony. The decision was based on clear, well-reasoned, and existing agency regulations and, as such, it was not arbitrary or capricious. Furthermore, the Defendants rejected the offer of written interrogatories, which the Court views as a reasonable proposal by the SSA. Accordingly, the Court will deny the Defendants' motion with prejudice.

## CONCLUSION

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

Very truly yours,

s/  *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure