<u>**NOT FOR PUBLICATION**</u>



**FILED**
JAMES J. WALDRON, CLERK

**DEC. 21, 2011**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: **MARY L. DIXON-FORD,** Debtor. | Case No.: 09-32052 (DHS) |
| **MARY L. DIXON-FORD,** Plaintiff, v. **US BANK NATIONAL ASSOCIATION, et al.** Defendants. | Adv. No.: 10-01772 (DHS)  Judge: Hon. Donald H. Steckroth |

**OPINION**

**APPEARANCES:**

Law Offices of Harvey I. Marcus
Harvey I. Marcus, Esq.
250 Pehle Avenue
Suite 200
Saddle Brook, New Jersey 07663
*Counsel for Plaintiff-Debtor*

Reed Smith LLP
Barbara K. Hager, Esq.
1650 Market Street
2400 One Liberty Place
Philadelphia, Pennsylvania 19103
*Counsel for Movant-Defendant, US Bank N.A., as Trustee for CMLTI 2007-10*

McCusker, Anselmi, Rosen, & Carvelli, P.C.
Michael T. Millar, Esq.
98 East Water Street
Toms River, New Jersey 08753
*Counsel for Movants-Defendants, Weichert Co., d/b/a Weichert, Realtors, and Mortgage Access Corp. d/b/a Weichert Financial Services*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

On June 17, 2010, the Debtor filed a single-count adversary complaint alleging claims for fraud at common law and under New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("CFA"), against each of the defendants in this adversary proceeding. Before the Court is a pair of summary judgment motions filed against the Plaintiff-Debtor, Mary L. Dixon-Ford ("Debtor"), by the Movant-Defendant US Bank National Association, as Trustee for CMLTI 2007-10 ("US Bank") and Movants-Defendants Weichert Co., d/b/a Weichert Realtors ("Weichert Realtors") and Mortgage Access Corp. d/b/a Weichert Financial Services ("WFS") (together, "Weichert") (collectively, the "Defendants").

The Debtor engaged Weichert Realtors as her real estate agent for the purpose of procuring a residential property. She alleges that Weichert Realtors knowingly omitted material information concerning the amount of real estate taxes on the property she purchased. Now in foreclosure, the Debtor further claims that WFS misrepresented her income causing her to qualify for a mortgage she could not afford. Weichert Realtors moves for summary judgment against the Debtor arguing that she fails to identify any affirmative misrepresentation or knowing omission to justify a finding of common law or statutory fraud. WFS defends on the grounds that the Debtor could not have relied on a misstatement of her own financial information and that, in any event, she signed the mortgage documents under penalty of perjury and thus is jointly responsible for any alleged misrepresentation. Concurrently, US Bank argues that the Debtor's claims against it, find no support in the evidence or under applicable law. Specifically, US Bank insists that it cannot be held liable under the CFA or common law because it did not participate in the alleged fraudulent behavior. Additionally, US Bank purports to qualify as a holder in due course under New Jersey law, which precludes the Debtor from asserting such claims against it.

For the reasons that follow, the Court will grant US Bank's motion and Weichert's motion as to Weichert Realtors, and denies summary judgment as to WFS. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**FACTS AND PROCEDURAL HISTORY**

**I.     Movants' Facts**

    **A.     Property Taxes**

In 2006, the Debtor engaged Weichert as her real estate representative for the purpose of locating a multi-family home. (Weichert's 56.1 Stmt. of Material Facts, ¶ 1) ("Weichert's Stmt. of Facts") On February 19, 2007, the Debtor executed a sale contract in which she offered to

purchase a residence located in Hillside, New Jersey. (*Id*. at ¶ 10) The Debtor was represented by attorney John B. D'Alessandro in the transaction. (*Id*. at ¶ 15) Mr. D'Alessandro has testified that he discussed post-closing property taxes with the Debtor and further instructed that "she and the realtor . . . should really go to town hall to check it out." (Decl. of Michael Millar, Ex. H at 20:10-21:10) ("Millar Decl.") One of the Debtor's real estate agents, Lillian Pelote-Hodges, testified that they did not have information regarding property taxes. (Weichert's Reply Br. in Further Supp., p. 6) Lastly, Weichert alleges that prior to closing, the Debtor had no communication with her real estate agents. (Weichert's Stmt. of Facts, ¶ 19)

### B. The Mortgage

The Debtor sought to finance the purchase of real property with a mortgage loan from WFS. At all times relevant to this transaction, the Debtor was employed by the Social Security Administration ("SSA") as a "telephone service representative" earning approximately $45,000 annually. (Weichert's Stmt. of Facts, ¶¶ 20-1; Millar Decl., Ex. B at 10:7-16, 21:16-20) The Debtor contracted with WFS to obtain a "stated income" mortgage loan. (*Id*. at ¶ 29) In a stated income loan program, the borrower applies for financing based on her income as stated in her loan application. (*Id*. at ¶ 30) The lender then performs a Verification of Employment ("VOE") directly with the borrower's employer to confirm the borrower's stated income.[1] (*Id*. at ¶ 31) On February 24, 2007, the Debtor executed a loan application indicating she was employed as the "Vice President" of the SSA earning $11,900 monthly ($142,800 annually). (Weichert's Stmt. of Facts, ¶ 22)

On April 9, 2007, the Debtor accepted a mortgage loan commitment with WFS. (*Id*. at ¶ 28) Also on April 9, and again on April 10, WFS submitted a VOE form to the SSA. (Weichert's Br. in Supp. of Mot. for Summ. J., pp.5-6) ("Weichert's Br.") Weichert alleges that on or about April 10, 2007, someone at the SSA provided a VOE form to the Debtor together with a handwritten note to the Debtor's attention, arguably, before it was returned to WFS. (*Id*. at ¶ 35; Millar Decl., Ex. P) On April 18, 2007, the Debtor closed on the property and executed a second loan application which also misstated her employment and income information. (Weichert's Stmt. of Facts, ¶¶ 36-7) Post-closing review revealed the existence of two VOEs. One correctly stated the Debtor's employment as a "Telephone Service Rep[resentative]" while the other incorrectly stated she was the "Vice President" of the SSA. (Weichert's Stmt. of Facts, ¶¶ 46-7) The incorrect VOE was supplied to the WFS underwriter. (Weichert's Stmt. of Facts, ¶ 48)

The Debtor occupied the property with several family members, some of whom contributed to household expenses, including the mortgage. (*Id*. at ¶¶ 42-3) The Debtor defaulted on her mortgage when one of the contributing family members relocated. (*Id*. at ¶ 45)

---

[1] In evaluating a stated income loan candidate, the lender does not rely on any supporting documentation provided by the borrower beyond the income listed on the loan application. (Weichert's Stmt. of Facts, ¶ 30)

4

### C. Assignment of the Debtor's Mortgage

On October 31 2007, Citigroup Mortgage Loan Trust Inc. ("Buyer") and Citigroup Markets Realty Corp. ("Seller") executed a Mortgage Loan Purchase Agreement ("MLPA") as part of a mortgage-backed securities transaction. (US Bank's 56.1 Statement of Facts, ¶ 21-23) ("US Bank's Stmt. of Facts") The details of the transaction are set forth in a Pooling and Servicing Agreement ("PSA") that provides for the "selling, purchase, [and] deposit . . . of a series of residential mortgage loans . . . in trust CMLTI 2007-10," with US Bank as trustee. (*Id*. at ¶ 23) The mortgage loan schedule attached to the MLPA and the PSA indicate that the Debtor's mortgage was included in the transaction and deposited in the trust. (*Id*. at ¶ 24) US Bank did not conduct an independent review of the individual mortgages because the Seller warranted that the mortgages were enforceable and underwritten in accordance with its guidelines at the time of their originations. (*Id*. at ¶ 28)

Pursuant to the PSA, US Bank received the Debtor's mortgage note and the original recorded mortgage. (*Id*. at ¶ 32) There are no indicia of fraud, alteration, or invalidity on the face of the Debtor's mortgage or note. (*Id*. at ¶ 35-36) Further, neither Weichert nor the Debtor alerted US Bank to any alleged misrepresentations or other flaw in the origination of the mortgage. (*Id*. at ¶ 18-20)

## II. Plaintiff's Additional and Disputed Facts

The Debtor asserts that pursuant to WFS's loan officer's request, she provided documentation that accurately described her employment and overall financial position. (*Id*. at p. 6; Ex. B at 15:20-25, 16:1-9, 17:24-25, 18:1-6) The Debtor provided the following documentation: (1) pay stubs; (2) tax returns; (3) a bank statement for the period between February 14, 2007 and March 16, 2007, which includes an entry for the direct deposit of the Debtor's wages in the amount of $782.60; and (4) a credit report, indicating the Debtor's employment as "Teller Service." (*Id*. at p. 6-7) Nevertheless, the WFS loan officer prepared the loan application containing the incorrect employment information. (Pl.'s Br. in Opp'n, p. 6)

In addition, during post-closing review, the WFS Vice President of Processing, Laura Williamson, spoke with the Debtor's supervisor at the SSA, John Elder, regarding the VOE. (*Id*. at p. 7; Williamson Dep. 25:12-13) Mr. Elder confirmed that he completed a VOE accurately stating the Debtor's employment as a telephone service representative. (*Id*. at 7-8; Williamson Dep. 30:1-10) Importantly, Ms. Williamson testified that the VOE containing incorrect information appeared to have been altered. (*Id*. at p. 8; Williamson Dep. 35:13-18) Lastly, Ms. Williamson stated that the altered VOE was faxed to Weichert from a number with a 908 area code. (*Id*. at p. 7; Williamson Dep. 25:1-3) The office where the loan application was allegedly completed is located in Union, New Jersey and has an area code of 908. (*Id*. at p. 8) Accordingly, the Debtor opines that the WFS loan officer altered the VOE in order to qualify the Debtor for a larger loan.

## DISCUSSION

### I.  Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."  *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact.  *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'"  *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party.  *See id.* at 248.  Furthermore, a material fact is determined by the substantive law at issue.  *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248).  A fact is "material" if it might affect the outcome of the suit under governing law.  *Id.*  Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law.  *Id.* at 248-50.  Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322-23.  When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment.

*See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Weichert's and WFS's Motion for Summary Judgment

The Debtor asserts that Weichert and WFS made material omissions and misrepresentations in connection with the purchase and financing of her residential property. As a result, the Debtor brings claims alleging both statutory and common law fraud.

### A.     Common Law Fraud

In New Jersey, common law fraud generally requires a showing of five elements: (1) a material misrepresentation or omission of a presently existing or past fact, (2) with knowledge of the misrepresentation's falsity or the omission's materiality, (3) intending the other party rely on it, (4) reasonable reliance thereon, and (5) damages as a result. *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997); *see also Zorba Contractors, Inc. v. Housing Auth. of the City of Newark*, 362 N.J. Super. 124, 139 (App. Div. 2003). In the instant matter, the Debtor alleges both a material misrepresentation and a material omission. Specifically, the Debtor accuses WFS of falsifying information contained in the loan applications and Weichert Realtors of failing to disclose the potential real estate tax consequences of the sale.

In the case of an omission, a plaintiff must "demonstrate that the defendant concealed, suppressed or omitted a material fact, knowingly, and with the intent that others rely on the omission." *Id.* (internal quotation marks omitted). In the case at bar, the issue of knowledge is disputed. Lilian Pellote-Hodges of Weichert Realtors, the Debtor's real estate agent, testified that "[she] did not discuss the taxes . . . because [she] did not have that information." (Pelote-Hodges Dep. 15:17-25, 16:1-25) Still, the Debtor insists that the real estate agents must have known that property taxes would increase. However, the Debtor has not produced evidence that establishes knowledge on the part of Weichert Realtors other than general knowledge that real estate taxes often increase, which Plaintiff should also know. Thus, the Debtor's claim against Weichert Realtors is supported not by facts, but allegations. Though the allegations concern facts material to the Debtor's claim, they do not create a *genuine* dispute. That the information was *knowingly* omitted is an essential element of the Debtor's claim which has not been proven. Simply put, "there is an absence of evidence to support the [Debtor's] case." *Celotex Corp.*, 477 U.S. at 325. Therefore, the Court grants summary judgment on the common law fraud claim in favor of Weichert Realtors and against Plaintiff.

As for the common law claim against WFS, material facts remain in dispute that render summary judgment inappropriate. Generally, "where a party affixes his signature to a written instrument . . . a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in signing." *Peter W. Kero, Inc. v. Terminal Constr. Corp.*, 6 N.J. 361, 370 (1951). Consequently, WFS

7

argues that the Debtor is deemed to have read the loan applications and therefore, could not have justifiably relied on a misstatement of her own income. *See Lucero v. American Home Mortgage*, 2011 U.S. Dist. Lexis 28768 at *8 (N.D. Cal. Mar. 21, 2011). However, exceptions to the general rule exist where the signature is obtained by fraud or misrepresentation or where the signor is prevented from reading the document. *See Filmlife, Inc. v. Mal "z" Ena*, 251 N.J. Super. 570, 575 (App. Div. 1991) Notably, "th[e] rule does not apply when the execution of the contract has been induced by fraud, even though the fraud may have been discovered by reading the document[.]" *Berman v. Gurwicz*, 178 N.J. Super. 611, 617-18 (Ch. Div. 1981).

Here, all parties agree that the loan applications, both of which materially misstated the Debtor's income, were executed by the Debtor. Further, the Debtor states that she did not read the loan applications. However, the Debtor testified that WFS represented that she could afford the loan and that such representations caused her to go forward with the transaction despite her reservations.[2] (Pl.'s Br. in Opp'n to Summ. J., p. 7) WFS denies the Debtor's claims and relies on provisions within the executed documents that purport to excuse WFS from liability under the circumstances. The record is admittedly murky regarding the extent to which WFS induced the Debtor into executing the loan documents. Still, the parties have clearly assumed competing positions with respect to the degree and nature of any alleged inducement. Absent the benefit of trial, the Court is unwilling to foreclose the Debtor's common law claim against WFS. "It is the policy of the law to protect the unwary and the foolish as well as the vigilant . . . and negligence in trusting a representation will not . . . excuse a positive willful fraud." *Peter W. Kero, Inc*., 6 N.J. at 369. Accordingly, WFS is denied summary judgment on the claim for common law fraud.

### B.    The Consumer Fraud Act

The Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, has been extensively explored by New Jersey courts such that its interpretation and application is well-settled. *Herner v. Housemaster of America, Inc.*, 349 N.J. Super. 89, 105 (App. Div. 2002). The CFA is protective legislation targeting fraudulent, deceptive, and other similar marketing or advertising practices that harm consumers. *See Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 272 (1978). The Act arms consumers with a private cause of action that may be pursued in conjunction with a claim for common law fraud. *See Zorba Contractors*, 362 N.J. Super. at 139. The statute reads, in relevant part,

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment . . . or omission of any material fact with intent that others rely upon such concealment . . . or omission, in connection with [the] sale or

---

[2] Prior to closing, the Debtor discussed with WFS whether she could afford "the home that [she] wanted." (Dixon-Ford Dep. 68:8-15) "I didn't think that we were going to be able to afford a home . . . I asked [WFS] [if] we were still going to be able to get a home, and [WFS] told me that we would." (*Id*. at 67:6-19)

8

> advertisement of any merchandise or real estate . . . whether or not
> any person has in fact been misled, deceived or damaged thereby,
> is declared to be an unlawful practice[.]

N.J. Stat. Ann. § 56:8-2.

A CFA claim requires a showing of three elements: (1) unlawful conduct by the defendants, (2) an ascertainable loss on the part of the plaintiff, and (3) a causal nexus between the "method, act, or practice declared unlawful" and the consumer's "ascertainable loss." *New Jersey Citizen Action v. Schering*, 367 N.J. Super. 8, 12-13 (App. Div. 2003). The CFA recognizes three general categories of unlawful acts: (1) affirmative acts, (2) knowing omissions, and (3) regulatory violations. *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 556 (2009) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994)). Unlike the common law, a lack of knowledge or intent to deceive will not preclude liability for an affirmative misrepresentation. *Gennari*, 148 N.J. at 605. The Act can be applied to any unfair practice even where merchants act in good faith. *Id.*; *see Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11-12 (2004). Indeed, it is the offending act's "capacity to mislead [which] is the prime ingredient," of a CFA action. *Cox*, 138 N.J. at 17 (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977)). Still, the CFA does require that the omission or concealment of a material fact be knowing and contravene a duty to disclose, thereby mirroring the common law standard governing material omissions under the Act. *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 131 (2011) (quoting *Bosland*, 197 N.J. at 556 (2009)); *see Arcand v. Brother Int'l Corp.*, 673 F.Supp. 2d 282, 297 (D.N.J. 2009). In contrast, the CFA excuses the victim of a fraud from the burden of showing reliance thereon, instead requiring "only proof of a causal nexus between the [act or omission] . . . and the loss." *Zorba Contractors*, 362 N.J. Super. at 139; *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (proof of an ascertainable loss replaces the reliance requirement); *see also* N.J. Stat. Ann. § 56:8-2 (liability accrues "whether or not any person has in fact been misled, deceived or damaged thereby"). Lastly, the CFA is to be construed liberally to accomplish its broad purpose and protect the public. *See Lettenmaier v. Lube Connection, Inc.*, 162 N.J. 134, 139 (1999); *see also Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001).

In support of its motion, Weichert relies on the holdings in *Jatras v. Bank of America Corp. et al.*, No. 09-3107, 2010 U.S. Dist. Lexis 40074 (D.N.J. April 22, 2010)[3] and *Poray v. Altimate Discount Mortgage*, No. L-1443-06, 2010 N.J. Super. Unpub. Lexis 2180 (N.J. Super. App. Div. Sept. 1, 2010).[4] In *Poray*, the plaintiff-borrower inflated his income on a mortgage application, at the alleged direction of the defendant-loan agent, and eventually accepted a mortgage, albeit on different terms than anticipated. The plaintiff subsequently brought CFA

---

[3] Weichert cites *Jatras* for the propositions that (1) a lender's determination of a borrower's ability to pay is for the lender's protection and (2) there can be no fraud where the borrower signs documents misrepresenting his or her income and expenses. (Weichert's Reply Br. in Supp. of Summ. J., p. 12)

[4] Weichert cites *Poray* for the proposition that where a borrower executes a loan application grossly inflating her income, she commits a fraud against the lender. (Weichert's Reply Br. in Supp. of Summ. J., p. 10)

claims, amongst others, against the defendant-mortgage company and its agent. All claims against the defendants were eventually dismissed. The defendants then moved for summary judgment against the plaintiff arguing that the plaintiff engaged in fraud by misrepresenting his income on the loan documents. In opposition, the plaintiff submitted a certification that the income on the application was in fact accurate. The trial court disregarded the plaintiff's certification as a "sham affidavit" as it directly contradicted his deposition testimony and granted summary judgment to the defendants. The appellate division affirmed.

In *Jatras*, the plaintiff-borrowers applied for and obtained a loan from the defendant-mortgage company in order to finance the purchase of certain real estate. After executing the loan application, the plaintiffs discovered that the defendant failed to include a monthly rental payment in calculating the 'debt-to-income' ratio. As a result, the plaintiffs argued, they were approved for a loan they could not afford. On a motion to dismiss the plaintiffs' amended complaint, the District Court found that the plaintiffs could not support a claim of common law fraud because they could not reasonably rely on the defendant's misrepresentation of their financial position. Likewise, the District Court dismissed the plaintiffs' CFA claims apparently because the plaintiffs failed to show a fraud under the common law.[5]

Both *Poray* and *Jatras* are distinguishable from the case at bar. Unlike *Poray*, the loan documents here were prepared by the lender, WFS. The Debtor did not participate. Moreover, the Debtor supplied WFS with accurate information in the form of tax returns and pay stubs,[6] yet the loan documents produced by WFS materially misstated the Debtor's income and employment information, whereas the lender in *Jatras* merely miscalculated the borrowers' debt-to-income ratio. Another distinguishing fact is the presence of the altered VOE. According to WFS, a VOE is not prepared by the applicant and passes only between an applicant's employer and WFS. Who exactly is responsible for the misstated income and the allegedly altered VOE[7] is hotly disputed.[8] (*See* Weichert's Supplemental Combined Stmt. of Facts, pp. 17-22) In the Court's view, a mortgage lender whom, despite soliciting and obtaining accurate information,

---

[5] The *Jatras* plaintiffs brought a second amended complaint again alleging common law and statutory fraud. In *Jatras v. Bank of America Corp. et al.*, No. 09-3107, 2010 U.S. Dist. Lexis 135815 (D.N.J. Dec. 23, 2010), the District Court dismissed the common law claim on the same grounds as the prior decision, but dismissed the CFA claims due to the plaintiffs' failure to prove that any alleged misrepresentation by the defendant was the proximate cause of their losses.

[6] (Dixon-Ford Dep. 75:8)

[7] "On or about April 10, 2007, the [] VOE form was provided to Ms. Dixon-Ford by someone at the [SSA] under a cover page with handwritten notes that state: Mary – I faxed attached as instructed on top of form. You can fax again with your papers if you want to do so." (Weichert's Stmt. of Facts, ¶ 35) This statement suggests that the Debtor had an opportunity to alter and re-send the VOE. Still, WFS was in possession of two VOEs containing materially different information and seemingly failed to raise the issue prior to closing.

[8] Debtor suggests that a particular WFS employee is the responsible party. Under the CFA "it is clear that an individual who commits an affirmative act . . . that the CFA has made actionable can be liable individually[;] [a]lthough the statute would also impose liability on the individual's corporate employer for such an affirmative act[.]" *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 132 (2011).

presents to a borrower an application grossly misstating income and employment information may mislead a borrower into accepting a mortgage he could not afford.  As mentioned, the CFA attaches liability to any commercial practice with the capacity to mislead.  *See Cox*, 138 N.J. at 17.  Further, such a practice ostensibly exceeds the bounds "of reasonable business practice[s] in that it will victimize the average consumer . . . ."  *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J Super. 105 (App. Div. 2005) (quoting *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (App. Div. 2003).  The CFA is broadly applied to accomplish its remedial purpose of "root[ing] out consumer fraud."  *Lemelledo v. Benefit Mgmt. Corp.*, 150 N.J. 255, 264 (1997).  As a result, the acts of altering the VOE or inflating income to qualify an applicant for a mortgage may be enough to violate the CFA, in light of the Act's broad application and remedial purpose.  At this juncture, critical questions of fact remain disputed and unanswered.  Thus, WFS is denied summary judgment against the Debtor's CFA claim.[9]

### III.    US Bank's Motion for Summary Judgment: Holder in Due Course

The Debtor brings claims for fraud against US Bank, arguing that US Bank knew or should have known of the alleged misrepresentations made in connection with the origination of the Debtor's mortgage.[10]  In its defense, US Bank asserts holder in due course status.  Where a defense exists against the payee, the party "claiming the rights of a holder in due course has the burden of establishing that he is . . . such a holder."  *Gen. Inv. Corp. v. Angelini*, 58 N.J. 396, 403-404 (1971).  The Uniform Commercial Code, as adopted in New Jersey, provides that a holder of an instrument becomes a holder in due course when he takes the instrument "for value, in good faith, and without notice of any defense or claim against it."  *Carnegie Bank v. Shalleck*, 256 N.J. Super. 23, 33 (App. Div. 1992); N.J. Stat. Ann. § 12A:3-302(a)(2).  Additionally, it is required that "the instrument when . . . negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity."  N.J. Stat. Ann. § 12A:3-302(a)(1).  A holder in due course takes an instrument free of any personal defenses the maker may assert against the payee.  *Bancredit Inc. v. Bethea*, 65 N.J. Super. 538, 544 (App. Div. 1961).

That US Bank took the mortgage instrument for value is undisputed.  Instead, the Debtor alleges that US Bank "knew or should have known of the misrepresentations made by [WFS] and [Weichert Realtors] . . . ."  (Pl.'s Compl., ¶ 32)  Such allegations implicate the holder's good faith.  Good faith is defined by statute in N.J.S.A. 12A:3-103(a)(4) as "honesty in fact and the

---

[9] As noted above, a CFA claim alleging the knowing omission of a material fact closely parallels the common law.  Accordingly, summary judgment is granted in favor of Weichert Realtors as to the Debtor's CFA claim.

[10] The Debtor alleges that the April 2009 assignment of the Debtor's mortgage was defective and that the current holder of the note is not known; thus, US Bank lacks standing.  (Pl.'s Br. in Opp'n to Summ. J., pp. 5-6)  On October 19, 2011, responding to the Court's direction to establish standing, US Bank docketed the Certification of Jobina Jones-McDonnell in Support of Summary Judgment ("Standing Certif.") attaching a "true and correct copy of the original" note and mortgage.  (*See* Standing Certif., [ECF Doc. 48], Oct. 19, 2011, Ex. A, B)  Also, the Court finds that the April 2009 assignment was meant merely to provide notice of the earlier assignment and was not intended to be a separate transfer.  Accordingly, the Court is satisfied on the issue of standing.

observance of reasonable commercial standards of fair dealing." Good faith then, concerns both the subjective actions of the holder and the objective elements of the transaction. *Wawel Savings Bank v. Jersey Tractor Trailer Training Inc. (In re Jersey Tractor Trailer Training Inc.)*, 580 F.3d 147, 157 (3d Cir. 2009) (citing *Triffin v. Pomerantz Staffing Services, L.L.C.*, 370 N.J. Super. 301, 308 (App. Div. 2004)). Often, the critical issue is whether "[a] party [] fails to make an inquiry[] reasonably required by the circumstances . . . ." *Triffin v. Pomerantz Staffing*, 370 N.J. Super. at 309. As the court in *Carnegie Bank* observed,

> [o]rdinarily where the note appears to be negotiable in form and regular on its face, the holder is under no duty to inquire as to possible defenses . . . unless the circumstances of which he has knowledge rise to the level that the failure to inquire reveals a deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a defense from the transaction.

*Carnegie Bank*, 256 N.J. Super. at 35 (quoting *Gen. Inv. Corp.*, 58 N.J. at 403-404).

The above derives from the oft quoted rule laid down in *Rice v. Barrington*, 71 N.J.L. 806 (E. & A. 1968): "[b]ad faith, i.e. fraud, not merely suspicious circumstances, must be brought home to a holder . . . in order to defeat his recovery on a [] note upon the ground of fraud in its inception or between the parties to it." *Rice*, 71 N.J.L. at 807; *see HSBC Bank USA, N.A. v. Gouda*, 2010 N.J. Super. Unpub. Lexis 3029 at *11 (App. Div. Dec. 17, 2010). In the present matter, the note has been supplied to the Court for evaluation. (Standing Certif., [ECF Doc. 48], Oct. 19, 2011) The note is facially free from any irregularity that could have alerted US Bank to the existence of a potential fraud. While US Bank does possess the mortgage file containing the allegedly altered VOE, it was under "no duty to inquire" under the circumstances. *Carnegie Bank*, 256 N.J. Super. at 35; *see Triffin v. Somerset Valley Bank*, 343 N.J. Super 73, 85 (App. Div. 2001) ("to preclude liability from a holder in due course under [N.J.S.A. 12A:3-302], it must be apparent on the face of the instrument that it is fraudulent"). Failure to investigate inconsistencies in the mortgage file regarding the Debtor's income, without more, does not evidence bad faith sufficient to prevent US Bank from a holder in due course status. *See HSBC Bank USA, N.A. v. Gouda*, 2010 N.J. Super. Unpub. Lexis 3029 (that loan documents indicated the material terms of a loan changed shortly before closing did not implicate the holder's good faith); *see also Ocwen Loan Servicing, LLC v. Branaman*, 554 F. Supp. 2d 645, 649 (N.D. Miss. 2008) ("while the [d]efendants have alleged a potential forgery in the loan documents, no specific evidence has been presented which casts doubt on the authenticity of the promissory note"). Certainly, fraud is one explanation in the array of possibilities, however, constructive notice requires "circumstances [] so strong that if ignored they will be deemed to establish bad faith on the part of the transferee." *Provident Sav. Bank v. Pinnacle Mortg. Inv. Corp. (In re Pinnacle Mortg. Inv. Corp.)*, 1998 U.S. Dist. Lexis 23289 at *32 (D.N.J. Dec. 9, 1998) (simultaneously construing holder in due course status under Pennsylvania and New Jersey law as the law of the two states "[was] largely consistent on the issues," raised therein).

Moreover, the undisputed facts show that US Bank did not participate in the origination of the mortgage, nor is there evidence of collusion or communication between Weichert and US Bank regarding the Debtor's mortgage. *See Davis v. Clark*, 85 N.J.L. 696, 699 (E. & A. 1914) (there was no showing that the holder in due course had any knowledge of fraud perpetrated upon a debtor in the original transaction); *see also Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 480 (1952) (the subsequent holder "must have had actual knowledge of such facts that his action in taking the instrument amounted to bad faith") *accord Westfield Inv. Co. v. Fellers*, 74 N.J. Super. 575, 583 (Law Div. 1962). On the record, there are simply no facts which tend to apprise US Bank of potential defenses at the time of taking and impair good faith. Thus, US Bank holds the Debtor's mortgage in due course and is entitled to the benefits of its status.

The instant case involves alleged fraudulent inducement in connection with the origination of the Debtor's mortgage, that is, "the [Debtor] was led by deception to execute what [s]he knew to be a negotiable instrument . . . ." *New Jersey Mortg. & Inv. Co. v. Dorsey*, 60 N.J. Super. 299, 302 (App. Div. 1960). Under New Jersey law, fraud in the inducement is a personal defense against "transferees who have been parties to any fraud or illegality affecting the instrument or transferees who were prior holders with notice of the defenses or claims and not against holders in due course." *Carnegie Bank*, 256 N.J. Super. at 43; *see Bancredit*, 65 N.J. Super. at 544 ("a holder in due course plaintiff is, of course, immune to all personal defenses of the maker against the payee, including that of fraud in the inducement"); *see also New Jersey Mortg.*, 60 N.J. Super. at 302 (fraudulent inducement is a personal defense not available against a holder in due course). Thus, US Bank is immune to the Debtor's claims and the Court will grant US Bank's motion for summary judgment against the Debtor.

## **CONCLUSION**

Summary judgment is granted in favor of US Bank and Weichert Realtors against Plaintiff. The Plaintiff's common law and statutory fraud claims survive as to WFS because material questions of fact remain in connection with the Debtor's mortgage application.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

*s/    Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:    December 21, 2011